IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GEORGE W. MIDGETT and SUSIE MIDGETT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:20-cv-00941 |
| GOVERNOR ROY ASBERRY COOPER III, in his individual capacity, et. al., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This lawsuit, one of eight related cases,[1] arises out of the murder of four North Carolina prison employees at the hands of four inmates during a failed attempt to escape the Pasquotank Correctional Institution ("PCI") in October 2017. Plaintiffs George and Susie Midgett[2] are "close family members" who claim eighty-five violations of their Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983 by thirty-six named Defendants across two agencies and the State's executive branch, including North Carolina Governor Roy A. Cooper, III (the

---

[1] See case numbers 1:20-cv-00942, 1:20-cv-00943, 1:20-cv-00944, 1:20-cv-00947, 1:20-cv-00951, 1:20-cv-00952, and 1:20-cv-00953. Each case alleges substantially similar claims, brought by the same attorneys, against the same Defendants, and arising from the same underlying events.

[2] Plaintiffs' amended complaint incorrectly alleges that one of the officers killed in the attack, Officer Smith, is also a Plaintiff in this case. (Doc. 8 ¶ 56.)

"Individual Defendants"), in addition to the four inmate Defendants (the "Inmate Defendants"). (Doc. 8.) Although the amended complaint refers to claims for negligent and intentional infliction of emotional distress and false imprisonment, which are state law causes of action, it makes clear that all are alleged instead to arise under Section 1983.

Before the court is the Individual Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (4), (5), and (6).[3] (Doc. 17.) Plaintiffs responded in opposition[4] (Doc. 22), and the Individual Defendants have replied (Doc. 23). For the reasons set forth below, the motion will be granted and the amended complaint against the Individual Defendants will be dismissed.

I. BACKGROUND

The amended complaint is an extraordinary 510 pages long, which is wholly inconsistent with Federal Rule of Civil Procedure 8(a)(2)'s direction that a plaintiff provide "a short and plain

---

[3] Defendants have filed separate motions to dismiss in each of the related seven cases on the same grounds, which remain stayed pending the court's decision on the present motion.

[4] In their response, Plaintiffs question the ability of the Attorney General to represent the state employees in their individual capacity. The Attorney General represents all Individual Defendants by virtue of N.C. Gen. Stat. § 143-300.3: "the State may provide for the defense of any civil or criminal action or proceeding brought against [a State employee] in his official or individual capacity." Plaintiffs have not demonstrated why the Attorney General may not do so in this case.

statement of the claim showing that the pleader is entitled to relief." It is also a subsequent iteration of a previously-filed action involving the same incident and some of the same parties, which this court dismissed on grounds of sovereign immunity and failure to allege a constitutional violation under Section 1983. See Darden v. Cooper, No. 1:19CV1050, 2020 WL 5518508 (M.D.N.C. Sept. 14, 2020). While it is difficult to distill such a prolix document, the basic facts alleged in the present amended complaint, viewed in the light most favorable to Plaintiffs, show the following:[5]

Plaintiffs allege they are close family members of Wendy Shannon who, along with three other officers, was employed at PCI and murdered by the Inmate Defendants during an escape attempt.[6] (Doc. 8 ¶¶ 11, 43.)[7] Plaintiffs allege Defendants knew of the potential for harm through the death of another officer at a different facility in April 2017. (Id. ¶ 48.) On October 12, 2017, at least twelve close-custody prisoners and eighteen medium-

---

[5] Defendants challenge Plaintiffs' amended complaint as improper because it was amended on the same day Plaintiffs attempted service. (Doc. 18 at 12-13.) Because both complaints would fail for lack of standing, the court need not resolve this issue and accepts the allegations of the amended complaint for purposes of the present motion only.

[6] Plaintiffs in all eight cases claim to be close family members of officer Wendy Shannon.

[7] Plaintiffs' amended complaint erroneously restarts the paragraph numbers after paragraphs 57 and 23, and alters the page numbers by labeling page 107 as page 98.

3

custody prisoners were working in a sewing plant operated by Correction Enterprises ("CE"), located within the perimeter fence of PCI. (Id. ¶ 51.) These prisoners included "close-custody" prisoners, meaning those convicted of the most heinous and violent crimes, such as murder and rape. (Id. ¶¶ 4, 51.) In contravention of DPS and CE policy, and due to underlying staffing shortages, correctional supervisors charged Officer Justin Smith with guarding all thirty of the inmates in the plant alone. (Id. ¶ 51.) On that day, four violent inmates gained unfettered access to deadly tools and closed, unguarded hallways within the plant and attempted to escape. (Id. ¶¶ 43, 54.) The four inmates attacked employees, including Officer Shannon, with claw hammers and scissors. (Id. ¶ 55.) Allegedly due to ineffective security policies, monitoring, training, and equipment, the attack was allowed to continue for over twenty minutes before help arrived. (Id.) Officers Darden,[8] Shannon, Howe, and Smith ultimately died of the injuries inflicted upon them. (Id. ¶ 11.) Plaintiffs seek compensatory damages, attorneys' fees, costs, prejudgment interest, and other equitable relief as the court deems proper, all under the rubric of Section 1983. (Id. at 509-10.)

Plaintiffs generally charge that institutional failures contributed to the danger for the inmates' violent escape attempt.

---

[8] No first names are alleged for Howe and Darden.

(Id. ¶ 54.) These failures include poor hiring and retention practices; severe understaffing; improper training; lack of safety equipment; lax, unenforced, and ineffective safety and security procedures; and inadequate supervision of staff and inmates. (Id. ¶¶ 54-55.)

The Individual Defendants now move to dismiss the amended complaint on several grounds. Principal among them are the following: Plaintiffs failed to properly serve the vast majority of Defendants; Plaintiffs failed to serve (properly or improperly) a number of Defendants in the time ordered previously by the court; Plaintiffs' claims are barred by *res judicata* based on a prior state-court lawsuit; Plaintiffs lack standing to assert their claims under 28 U.S.C. § 1983; the Individual Defendants enjoy qualified immunity; and the deliberate indifference claims fail because Shannon was voluntarily employed. (Doc. 18.) Plaintiffs have filed a six-page response that generally argues that the Individual Defendants' motion raises fact issues not suitable for resolution on a motion to dismiss and in many respects fails to respond to several of the Individual Defendants' arguments. (Doc. 22.) The Individual Defendants filed a reply. (Doc. 23.) The motion is ready for decision.

## II. ANALYSIS

### A. Legal Standard

Among the arguments raised, the Individual Defendants contend

5

that this case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiffs lack standing as they lack the capacity to bring Section 1983 claims predicated on injuries to a third party, Shannon. (Doc. 18 at 13-15.) In response, Plaintiffs argue that their Section 1983 claims are "based on the Constitutional wrongs Plaintiffs have suffered based on the wrongdoing Defendants have engaged in" and are not wrongful death claims. Plaintiffs also argue that "Defendants erroneously assert that Plaintiffs related to decedents and survivors are only incidentally affected" by the injuries to and death of Officer Shannon. (Doc. 22 ¶¶ 15, 21, 23.) These assertions do not dispute the Individual Defendants' arguments and therefore fail to meet Plaintiffs' burden under Local Rule 7.2 to provide an argument as to the merits of their claim. L.R. 7.2(a)(4) (requiring briefs to contain argument, with reference to all statutes, rules, and authorities relied upon). In the absence of any explanation, the court nevertheless has the obligation to determine whether the motion to dismiss is merited. See Local Rule 7.3(k); Skinner v. Womack Army Med. Ctr., No. 1:19CV572, 2019 WL 6350628, at *4 (M.D.N.C. Nov. 27, 2019). While courts should ordinarily rule on jurisdictional issues before proceeding to the merits, see Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 (1998)), the prudential standing doctrine is a

6

threshold question that may be resolved before addressing jurisdiction. See Tenet v. Doe, 544 U.S. 1, 6 n. 4 (2005) ("the prudential standing doctrine[] represents the sort of threshold question we have recognized may be resolved before addressing jurisdiction") (citation and internal quotation marks omitted); Lolavar v. de Santibanes, 430 F.3d 221, 228 (4th Cir. 2005) ("there is no invariable rule . . . that in each instance a district court must find its subject matter jurisdiction before addressing other questions in the controversy.").

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). For a case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)) (internal quotation marks omitted). The judicial doctrine of standing is "an integral component of the case or controversy requirement." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (citation and internal quotation marks omitted). "Prudential standing encompasses several judicially-created limitations on federal jurisdiction, such as the general prohibition on a

7

Case 1:20-cv-00941-TDS-LPA   Document 24   Filed 10/26/21   Page 7 of 13

litigant's raising another person's legal rights . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  Id. (citation and internal quotation marks omitted).

Generally, challenges to constitutional standing are addressed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because "Article III gives federal courts jurisdiction only over cases and controversies."  Id. (citation and internal quotation marks omitted).  But Defendants do not argue that Article III jurisdiction is lacking.  Rather, they argue prudential standing.

As the Fourth Circuit has explained, prudential standing is not a jurisdictional question.  United States v. Day, 700 F.3d 713, 721 (4th Cir. 2012) ("Unlike Article III standing, issues of prudential standing are non-jurisdictional and may be pretermitted in favor of a straightforward disposition on the merits.") (citation and internal quotation marks omitted); see also Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n. 2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)"); Rawoof v. Texor Petroleum Co., 521 F.3d 750, 756 (7th Cir. 2008) ("Prudential-standing doctrine is not jurisdictional in the sense that Article III standing is.")

8

(internal quotation marks omitted); VR Acquisitions, LLC v. Wasatch Cty., 853 F.3d 1142, 1146 n. 4 (10th Cir. 2017) (dismissing a complaint pursuant to Rule 12(b)(6), rather than Rule 12(b)(1), where plaintiff lacked prudential standing because such standing is not jurisdictional); American Iron & Steel Institute v. OSHA, 182 F.3d 1261, 1274 n. 10 (11th Cir. 1999) ("prudential standing is flexible and not jurisdictional in nature").

A motion to dismiss pursuant to Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

## B. Standing

Section 1983 provides a private right of action to those who allege they have been deprived of rights, privileges, or immunities

9

secured by the Constitution or laws of the United States under the color of state law. Parrat v. Taylor, 451 U.S. 527, 535 (1981). Accordingly, a Section 1983 plaintiff, like any person who claims a deprivation of constitutional or federally-protected rights, must allege some violation of his or her <u>personal</u> rights — not those of another. See English v. Powell, 592 F.2d 727 (4th Cir. 1979) (wife had no standing to maintain action arising from husband's demotion on job); Dohaish v. Tooley, 670 F.2d 934 (10th Cir. 1982) (right to bring action under civil rights act is personal in nature and does not accrue to a relative); Topic v. Circle Realty Co., 532 F.2d 1273 (9th Cir. 1976) (litigants have no standing to assert civil rights of third parties injured by unlawful conduct). The question here is whether Plaintiffs' injuries constitute the type of deprivation of personal rights contemplated by Section 1983.

In their amended complaint, Plaintiffs make no claims regarding any injuries they suffered due to the alleged failures of the Defendants.[9] At best, Plaintiffs have referred to a

---

[9] Plaintiffs appear to allege they are injured because they, among other allegations, "lost their lives," were under a "substantial risk of serious harm," were "deprived of future earnings," and were even "locked inside the premises" due to the actions of each Individual Defendant. See, e.g., Doc. 8 ¶¶ 390, 484. However, the facts only allege that, as a result of Defendants' failures, officers Darden, Shannon, Howe, and Smith were murdered — not the Midgetts. Therefore, while a motion pursuant to Rule 12(b)(6) "take[s] the facts in the light most favorable to the [non-moving party]," for the purposes of this standing analysis, the court "need not accept as true unwarranted inferences, unreasonable

10

constitutional liberty interest in continued association, care, and support of Officer Shannon.[10]  (Doc. 8 ¶¶ 471-473.)  However, the Fourth Circuit does not recognize a cause of action arising from "governmental actions affecting the family only incidentally."  See Shaw v. Stroud, 13 F.3d 791, 804–805 (4th Cir. 1994) (dismissing a Section 1983 claim brought by the wife and minor children of arrestee who was shot and killed by a state trooper "because the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally").  This accords with the holdings of other circuits.  See, e.g., Valdivieso Ortiz v. Burgos, 807 F.2d 6, 9 (1st Cir. 1986) (declining to find violation of substantive due process right based on government action causing only an "incidental deprivation" of the relationship between appellants and their adult relative when he was allegedly beaten to death by guards while in prison); McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003) (where officer shot and killed individual after he refused demands to hold up his hands, father could not recover for deprivation of

---

conclusions, or arguments."  See Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

[10] Of note, this loss of consortium claim is brought by "Plaintiff Rosa Shannon, Tammy Shannon, and Arnetta Sheard."  However, Rosa Shannon, Tammy Shannon, and Arnetta Sheard are Plaintiffs in case number 1:20-cv-00953.

11

his relationship with his son because the official action was "not directed at the parent-child relationship"); see also Claybrook v. Birchwell, 199 F.3d 350, 357–58 (6th Cir. 2000) (adult children whose father was shot by police officers could bring action under Section 1983 only as administrators of father's estate, not for any collateral injuries suffered by themselves personally); Russ v. Watts, 414 F.3d 783 (7th Cir. 2005) (parents had no constitutional right to recover for loss of society and companionship of adult son who was fatally shot by police officer); Cook v. Howard, 484 F. App'x 805, 825 (4th Cir. 2012) (adhering to Shaw and denying a substantive due process claim to a family member of a decedent whose death was allegedly caused by the unlawful conduct of police officers).[11]

For these reasons, Plaintiffs' personal losses do not rise to the level required to state a valid claim under 42 U.S.C. § 1983.[12] Therefore, Defendants' motion to dismiss Plaintiffs' claims based on lack of prudential standing will be granted.

---

[11] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

[12] Furthermore, as explained in this court's prior order, Plaintiffs' substantive due process violation claims in the voluntary employment context are futile to the extent they are based on a deliberate indifference theory of liability. See Darden v. Cooper, No. 1:19CV1050, 2020 WL 5518508, at *4 (M.D.N.C. Sept. 14, 2020) ("To support a due process violation in the context of voluntary employment with the government, it must be alleged that the government acted with an intent to harm.").

12

Because Plaintiffs have failed to establish standing under Section 1983, the court need not address the Individual Defendants' remaining 12(b)(1), (2), (4), (5), and (6) arguments.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that the Individual Defendants' motion to dismiss (Doc. 17) is GRANTED.

/s/   Thomas D. Schroeder<br>United States District Judge

October 26, 2021